IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-CR-16 |
| | ) | (VARLAN/SHIRLEY) |
| TONY BRITTON CROWDER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter comes before the Court upon the defendant's Motion to Suppress Statements of Defendant [Doc. 15], filed on April 12, 2005. The parties came before the Court for a suppression hearing on April 25, 2005. The government was represented by Assistant United States Attorney Tracee Plowell, and the defendant was represented by Attorney Steven Ward. The defendant was also present. Following the hearing, the Court took the suppression motion and related filings under advisement.

The defendant is charged [Doc. 1] with possession of a .22 caliber Iver Johnson rifle on September 28, 2001, while having previously been convicted of seven felonies. The defendant seeks the suppression [Doc. 15] of a statement he gave to law enforcement on September 30, 2001, contending that the statement was made in violation of his rights under the

1

Fifth and Fourteenth Amendments.[1]  Specifically, he contends that his statement was made while he was in custody and was involuntary.  The government responds [Doc. 18] that the defendant was not in custody at the time he made the statement in question and that, even if he were in custody, he was advised of the Miranda warnings and voluntarily waived his right to an attorney.

## I.  EVIDENCE FROM THE SUPPRESSION HEARING

At the April 25, 2005 hearing, the government called Detective Jeffery S. Vittatoe of the Loudon County Sheriff's Department.  He said that in September 2001, he was working as a detective for the Monroe County Sheriff's Department.  He said that on September 30, 2001, he went to 125 Star Mountain Drive, the defendant's residence, to investigate a shooting of the defendant's brother that had occurred a couple of days earlier.  He said that he arrived at the residence alone in an unmarked Crown Victoria and wearing plain clothes.  He said that he first spoke with the defendant's wife, Marie, and then with the defendant.  He said he told the defendant that he was investigating the defendant's brother's shooting and asked the defendant to give him the firearm that had been used in the shooting.  He said that the defendant released the firearm to him.  He said he asked the defendant if he would accompany him to his office at the Sheriff's Department and that the defendant said that he would.

Detective Vittatoe testified that the defendant rode with him back to the Sheriff's

---

[1] The defendant also summarily claims [Doc. 15] to challenge his statement under the "State Constitution" but makes no reference to the portion of the Tennessee Constitution upon which he relies.  The defendant does not mention the state constitution in his Memorandum in Support of Motion to Suppress [Doc. 16], nor did he mention the Tennessee Constitution during oral argument at the April 25 hearing.  Accordingly, the Court concludes that the defendant is no longer pursuing this claim.

2

Department. He said that the defendant was in the front seat and was not handcuffed. He said that he did not threaten the defendant nor draw his weapon. He stated that the defendant was not under arrest and did not ask for an attorney. He said that once they arrived at the Sheriff's Department, they went to his office, and he shut the door. Detective Vittatoe related that he explained the defendant's <u>Miranda</u> rights to the defendant and that the defendant signed and dated a rights waiver form. He said that the defendant told him what happened in the shooting and that he wrote out a statement. He stated that the defendant began giving his statement immediately after executing the rights waiver. He said the defendant signed the written statement and initialed the top and bottom of each page as well as a couple of corrections that were made to the statement.

Detective Vittatoe testified that at the time the defendant gave the statement, the defendant was alert and did not appear to be intoxicated. He said that the defendant did not ask him to explain any portion of the rights waiver and that he did not make any threats or promises to the defendant. He said that only he and the defendant were in the room, that he did not attempt to coerce the defendant, that no guns were drawn, and that the defendant was not handcuffed. The government introduced the rights waiver and the defendant's statement as Collective Exhibit 1. Detective Vittatoe said that once the defendant gave his statement, he arrested the defendant for aggravated assault.

On cross-examination, Detective Vittatoe testified that he was not aware that the defendant and his wife were separated at the time he went to 125 Star Mountain Road. He stated that the first time he went to the residence, the defendant was not there, but Marie did not tell him that the defendant did not live there. He said that the second time he went to the residence,

3

the defendant was there. He did not recall if there were children present at the residence, but he said there were no other adults there besides the defendant and Marie. He said that he had the defendant ride with him to the Sheriff's Department because sometimes persons who drive themselves fail to show up at the Sheriff's Department. He also testified that the defendant did not ask to drive himself. He denied that the defendant asked him if the defendant needed a lawyer and reiterated that the defendant was not handcuffed.

Detective Vittatoe testified that they entered the Monroe County Sheriff's Office on the side at the entrance to the detectives' officers. Once in his office, the defendant never asked if he needed an attorney. He denied telling the defendant that he could not leave. He said the defendant also did not ask to leave. He said that he went over the rights waiver form with the defendant and the defendant signed it before they had a conversation and before the defendant gave a statement. He said the defendant had an opportunity to read the statement after he wrote it out, but he did not recall how long it took the defendant to read it. He said that he arrested the defendant immediately after the defendant gave his statement.

The defendant testified on his own behalf after the Court questioned him about his voluntary decision to testify and reminded him of his right to remain silent. The defendant said that he was not living at 125 Star Mountain Road at the time of the shooting. He stated that he returned to the residence on the day of the shooting to get some clothes and stayed at the house following the shooting. He said that when Detective Vittatoe arrived, Vittatoe did not give him a choice about going with Vittatoe. He also testified that Detective Vittatoe asked him to get in Vittatoe's car and to come with him. He said that he did not think he had a choice to refuse to go. He stated that he did not feel like he had the opportunity to leave on the way to the Sheriff's

4

Department.

The defendant testified that he twice asked Detective Vittatoe if he was under arrest and if he needed an attorney, once before they left for the Sheriff's Department and once on the way there. He said that Vittatoe said, "No," both times. He said that once he arrived at the Sheriff's Department, he was questioned about the shooting and gave a statement. The defendant examined Exhibit 1, the rights waiver form, and said that the signature on the form looked like his signature but that he was not sure that it was his. He said that if he signed the waiver, it was after he gave his statement. He said that Detective Vittatoe asked him what happened and then wrote out the statement. He said that Detective Vittatoe did not read the statement to him, that he did not have an opportunity to read it before he signed it, and that he did not read it before signing it. He said that he signed the statement after Detective Vittatoe finished writing and that Vittatoe showed him where to sign. He said that while he was at the Sheriff's Department, he did not believe he could leave.

On cross-examination, the defendant testified that this was not the first time he had been arrested and that he believed he had six prior felony convictions. He acknowledged that he had been through the criminal system several times but said that he did not understand how the system works and that he had never given a statement before September 2001. He said that at the time of the shooting, he was living with his mother in Madisonville. He said he had moved off the mountain sometime around August 2001 and was separated from his wife. He said that on the day of the shooting, he went to the Star Mountain Road residence to get some clothes. He said he left after the shooting incident and returned to his mother's house. He said that he returned to the Star Mountain Road residence on September 30, after his wife called and

5

said that Detective Vittatoe wanted to talk to him.  He said that he and his wife had been separated for a couple of days at the time, although he was not sure if they had gone to court for the separation.  He subsequently testified that they had not gone to court and were not legally separated at the time he spoke with Detective Vittatoe.

The defendant testified that because it had been four years since the incident, he was not sure whether Vittatoe knocked on the door when he arrived.  He said he went to the Sheriff's Department after Vittatoe asked him to do so.  He initially testified that he did not ask Detective Vittatoe if he could drive himself to the Sheriff's Department but, subsequently, said that he asked Vittatoe if he could drive himself and that Vittatoe said, "No, you need to ride with me."  The defendant said he rode in the backseat of Detective Vittatoe's car and that he was not handcuffed.

The defendant testified that when he went to Detective Vittatoe's office, the detective did not read him the <u>Miranda</u> rights.  He said that Vittatoe asked for a statement, wrote the statement out, and then asked the defendant to sign a form.  He said that no one was in the office with him and Detective Vittatoe and that he was not handcuffed.  He said that he did not ask to leave.  He said he felt as if he were under arrest, even though he was never told that he was.  He agreed that Detective Vittatoe told him that he was not under arrest.  He said that he twice asked Detective Vittatoe if he needed an attorney and that Vittatoe said, "No."

The defendant testified that he still had not read the statement and proceeded to read it in court.  He agreed that "T.C." were his initials.  He said he was not sure if he had initialed the statement by the corrections.  He said that he was not sure if that was his signature on the statement and that it did not look like his signature.  The defendant then testified that the

6

signature on the statement did look like his signature. He said that he did remember giving the statement and that he remembered Detective Vittatoe writing it out as he gave it. He recalled that Detective Vittatoe asked him to initial the statement at the top and bottom, to initial the corrections, and to sign it at the bottom. He said he did not get the rights waiver form to sign until after he gave the statement.

The defendant testified that when he arrived at the Sheriff's Department with Detective Vittatoe, they entered through a side door and went directly to Vittatoe's office. He acknowledged that Detective Vittatoe told him that he was not under arrest while they were in Vittatoe's office. He admitted that at no time while he was in Detective Vittatoe's office, did he ask for an attorney nor did he tell Detective Vittatoe that he did not want to talk. He agreed that he was not handcuffed, physically abused, or threatened during the making of the statement. He said that Detective Vittatoe told him that he was going to arrest his brother. He said that on the way to the Sheriff's Department, Vittatoe had said he would not arrest the defendant or his brother.

## II. FINDINGS OF FACT

The Court finds Detective Vittatoe's account of the events surrounding the questioning of the defendant on September 30, 2001, to be credible. Detective Vittatoe spoke with the defendant at a residence at 125 Star Mountain Road about the defendant's brother's shooting that had occurred two days earlier. Vittatoe asked the defendant for the firearm used in the shooting, and the defendant gave him the firearm. He asked the defendant to accompany him to the Sheriff's Department and that the defendant said that he would. Vittatoe drove the defendant to the Sheriff's

7

Department. The defendant rode in the front seat with Vittatoe and was not handcuffed. Once at the Sheriff's Department, they entered the area containing the detectives' offices through a side door and went to Vittatoe's office, where Vittatoe shut the door.

Detective Vittatoe advised the defendant of the <u>Miranda</u> warnings. The defendant, who appeared alert, signed a rights waiver form. The defendant then told Vittatoe what happened in the shooting. Vittatoe wrote out the statement. Vittatoe gave the defendant the opportunity to read the statement, which the defendant signed. The defendant also initialed the top and bottom of each page as well as a couple of corrections that were made to the statement. After the defendant had signed the statement, Vittatoe arrested the defendant for aggravated assault. At no time during his encounter with the defendant did Vittatoe threaten or coerce the defendant or did the defendant ask for or about an attorney.

The Court also finds that the defendant's testimony is not credible. The defendant contradicted his own testimony on many points. He testified that he had moved away from his Star Mountain Road residence in August 2001 but then said that he and his wife had only been separated for a couple of days when he talked with Detective Vittatoe on September 30, 2001. He also said they had been to court for their separation, but then testified that they were not legally separated at that time and had not been to court. The defendant testified that he did not ask if he could drive himself to the Sheriff's Department but later said that he did ask Vittatoe if he could drive himself and that Vittatoe said he could not. The defendant testified that he was not sure if the signatures on the rights wavier form or the statement were his but also affirmatively testified on direct examination that he signed the statement at the place on the statement where Vittatoe told him to do so. Although some of these contradictions are not material to the present inquiry, the defendant's signature on the

8

statement and the rights waiver form is important to the Court's decision. Accordingly, the Court rejects the defendant's account of the events of September 30 when it conflicts with that of Detective Vittatoe on a material point.

### III. ANALYSIS

The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966); see also United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." Stansbury v. California, 511 U.S. 318, 322 (1994); Salvo, 133 F.3d at 948.

The defendant contends that he was in custody at the time he gave his statement on September 30, 2001. In support of this contention, he argues that Detective Vittatoe drove him to the Sheriff's Department without giving him an opportunity to drive himself. He also points out that while he was giving the statement at the Sheriff's Department, he did not think he could leave. He maintains that because he was in custody at the time he made the statement, the government must show with "absolute clarity" that his statement was voluntary. See Eisen v. Picard, 452 F.2d 860, 863 (1st Cir. 1971). He argues that the government cannot carry this burden in the present case because of the coercive environment in which the defendant made his statement. In this respect, he asserts that he has only limited education, had twice asked whether he was under arrest or needed

9

Case 3:04-cr-00016-TAV-CCS   Document 27   Filed 05/25/05   Page 9 of 17   PageID #: 9

and attorney at the time he was questioned, and had been promised by Detective Vittatoe that no one would be charged in this case.

The government responds that the defendant was not in custody at the time he gave his statement. It maintains that an officer's contact with an individual suspected of a crime and invitation to accompany the officer to the police station to discuss a criminal matter does not place the individual in custody. It argues that in the present case, the defendant voluntarily agreed to accompany Detective Vittatoe to the Sheriff's Department because he had not been formally arrested nor had his freedom been restrained to the degree associated with a formal arrest. Additionally, the government argues that even if the defendant was in custody at the time he gave his statement, the defendant had waived his <u>Miranda</u> rights in writing and voluntarily gave the statement. It contends that the facts show that the defendant never invoked his right to counsel. Instead, it maintains that the defendant executed a rights waiver form, gave a statement, reviewed Detective Vittatoe's written version, made corrections, and then signed the statement.

The obligation to administer <u>Miranda</u> warnings to suspects only arises if there has been "such a restriction on a person's freedom as to render him 'in custody.'" <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977) (per curiam). To determine whether an individual is in custody for purposes of <u>Miranda</u>, the Court examines the totality of the circumstances to assess how a reasonable person in that situation would have interpreted the situation. <u>Salvo</u>, 133 F.3d at 948; <u>see also</u> <u>United States v. Swanson</u>, 341 F.3d 524, 528 (6th Cir. 2003). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." <u>Stansbury</u>, 511 U.S. at 323; <u>Mason v. Mitchell</u>, 320 F.3d 604, 631 (6th Cir. 2003). The "'ultimate inquiry is simply

10

whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" United States v. Knox, 839 F.2d 285, 291 (6th Cir. 1988) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted); Swanson, 341 F.3d at 529.

The Sixth Circuit has enumerated the following factors to be considered in evaluating the totality of the circumstances surrounding a defendant's questioning: (1) "whether a reasonable person in the defendant's position would feel free to leave," (2) "'the purpose of the questioning,'" (3) "whether the place of the questioning was hostile or coercive,'" (4) "'the length of the questioning,'" and (5) "'other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police . . . [or] acquiesced to their requests to answer some questions.'" Swanson, 341 F.3d at 529 (quoting Salvo, 133 F.3d at 950) (alterations in original).

In the present case, the Court finds that Detective Vittatoe went to the defendant's house to investigate a shooting, which had occurred a couple of days earlier. Both Detective Vittatoe and the defendant testified that Vittatoe *asked* the defendant to come with him to the Sheriff's Department. Detective Vittatoe testified that the defendant agreed to come with him. The Court accredits Vittatoe's testimony that the defendant did not ask to drive himself nor did he ask for an attorney before they arrived at the Sheriff's Department. The Court also believes Vittatoe's statement that the defendant rode in the front of the unmarked police car with him. Once at the Sheriff's Department, Vittatoe and the defendant entered through a side entrance into the detectives' office area. They went into Vittatoe's office, and Vittatoe shut the door. Detective Vittatoe was the

11

only officer present at the Star Mountain Road residence and for the statement. The defendant was not handcuffed at any point during the ride to the Sheriff's Department or during the making of the statement.

Turning to the first question, whether a reasonable person in the defendant's situation would have believed they were free to leave, the Court finds that this factor does not weigh in favor of finding that the defendant was in custody. In the present case, the examination of this factor relates also to the place of the questioning, which was Detective Vittatoe's office at the Sheriff's Department. When a defendant is questioned in a public place, it is typically deemed not to be hostile or coercive because exposure to the view of the public lessens the officer's opportunity to coerce the defendant. Berkemer v. McCarty, 468 U.S. 420, 438 (1984). On the other hand, the fact that interrogation takes place at the police station does not automatically mean that the individual is in custody. Mason, 320 F.3d at 631. In fact, the Sixth Circuit has held that the state court did not unreasonably apply constitutional law in finding that the defendant was not in custody for Miranda purposes when he was questioned at the police station after voluntarily riding to the station in an unmarked police car. Id. at 631-32. The court emphasized that the defendant was repeatedly told he was free to leave. Id. at 632. The defendant in Mason admitted that the officers told him several times that he was not under arrest. Id.

In the present case, the Court finds that the location of the questioning was not hostile or coercive. The defendant was questioned in Detective Vittatoe's office, which he entered through a side entrance to the Sheriff's Department. The defendant admitted that Detective Vittatoe told him that he was not under arrest. As noted above, the defendant's subjective belief otherwise (i.e., the defendant's feeling that he was under arrest) is not relevant to the inquiry. See Stansbury, 511 U.S.

12

at 323. Instead, the Court must ask whether a reasonable person who was voluntarily transported to the Sheriff's Department in the front seat of an unmarked police car, questioned in a detective's office, and told that he was not under arrest, would have believed he was free to leave. The Court answers this question in the affirmative. See Mason, 320 F.3d at 632 (deeming the fact that the defendant was taken to the police station in a police car to be irrelevant because the defendant came to the station voluntarily).

With regard to the other factors, there is no relevant testimony on the purpose of the interrogation other than Detective Vittatoe's statement that he went to the Star Mountain Road residence to investigate a previous shooting. Although the exact length of the questioning is not a part of the record, the Court notes that the rights waver form reveals that it was signed at 5:10 p.m. and the statement reveals that the interrogation began at 5:10 p.m. Detective Vittatoe testified that immediately after the defendant signed the waiver, he began questioning him about the shooting. Also, the statement itself is just short of two handwritten pages. This evidence indicates that the length of the questioning was relatively short. C.f., Mason, 320 F.3d at 632 (noting that the defendant was questioned for four hours in his second interview). With regard to whether the defendant possessed unrestrained freedom of movement during questioning, the Court notes that he was not handcuffed and that, although the office door was shut, there is no indication that it was locked or that it was shut in order to restrain the defendant's movement rather than to assure that the defendant and Detective Vittatoe would have privacy during the interview. Finally, although Detective Vittatoe initiated the contact with the defendant, Vittatoe's testimony reveals that the defendant agreed to go with Vittatoe to the Sheriff's Department. The Court finds that the application of these factors also support a finding that the defendant was not under arrest nor was

13

his freedom restrained to a degree associated with a formal arrest.

The Court finds that an examination of the totality of the circumstances reveals that the defendant was not in custody at the time he was questioned by Detective Vittatoe and gave a statement. It is well-settled that a person is not entitled to be advised of the Miranda warnings when questioned in a noncustodial setting. United States v. Warner, 971 F.2d 1189, 1201 (6th Cir. 1992) (holding that a statement was admissible despite the absence of Miranda warnings because the suspect was not in custody when interrogated). Accordingly, the Court recommends that the District Court deny the defendant's motion to suppress his statement.

Assuming arguendo that the defendant was in custody when he gave his statement, the defendant was advised of his rights under the Fifth Amendment and affirmatively waived those rights in a written wavier. The Court accredits Detective Vittatoe's testimony that the defendant signed the rights waiver before he gave his statement. The defendant argues that the coercive environment in which he gave his statement renders the statement involuntary.

Before it may introduce an incriminating statement by a defendant, the government must prove that the defendant voluntarily, knowingly, and intelligently waived his or her Miranda rights. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The government bears the burden of proving the voluntariness of the waiver by the preponderance of the evidence. Id. at 168. The defendant cites to the First Circuit in advocating that the government must show with "absolute clarity" that his statement was voluntary. See Eisen, 452 F.2d at 863. In Eisen, the court observed that a "court's 'conclusion that the confession is voluntary must appear from the record with unmistakable clarity.'" Id. (holding that the trial court had erroneously failed to consider the defendant's insanity in finding his statements to be voluntary) (quoting Sims v. Georgia, 385 U.S.

14

538, 544 (1967)). The First Circuit's pre-Connelly observation that the trial court's finding of voluntariness must be clear on the record does not implicate the government's burden of proof. Moreover, in the wake of Connelly, the Sixth Circuit has required that the government show that the defendant voluntarily waived his or her Miranda rights by the preponderance of the evidence. United States v. Miggins, 302 F.3d 384, 397 (6th Cir. 2002); Seymour v. Walker, 224 F.3d 542, 554 (6th Cir. 2000). Accordingly, the Court will apply the preponderance of the evidence standard in this case.

To determine whether a confession was voluntary, the court must examine the following factors in light of totality of the circumstances: (1) whether the police conduct was objectively coercive, (2) whether the coercive police conduct was sufficient to overbear the defendant's will when viewed subjectively from the defendant's state of mind, and (3) whether the coercive police conduct was in fact the cause of the defendant's will being overborne. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Connelly, 479 U.S. at 167. "If the police misconduct at issue was not the 'crucial motivating factor' behind [the defendant's] decision to confess, the confession may not be suppressed." McCall, 863 F.2d at 459 (citing Connelly, 479 U.S. at 163-64). At the April 25 hearing, the defendant argued that the coercive environment in which he gave his statement rendered it involuntary. In particular, he said that he had twice asked Detective Vittatoe if he needed an attorney, that he did not believe that he could leave during the questioning, and that Detective Vittatoe had promised him that no one would be charged. Only the last of these examples of alleged coercion relates to something that the police allegedly did to affect his statement. Additionally, the

15

defendant's claim in his brief that he had only limited education likewise alleges no police coercion.

Initially, the Court finds that Detective Vittatoe did not testify with regard to any statements to the defendant about who would or would not be charged in this case. The defendant, whom the Court has already found to lack credibility, testified that on the way to the Sheriff's Department, Detective Vittatoe told him that neither he nor his brother would be arrested. The defendant also said that while he was giving his statement, Detective Vittatoe told him that Vittatoe was going to arrest his brother. The Sixth Circuit has held that an officer's promises of leniency and threats of prosecution may be objectively coercive "if they are broken or illusory," which means that the promise "does not actually commit the police to undertake or refrain from any particular course of action." United States v. Johnson, 351 F.3d 254, 262 & n.1 (6th Cir. 2003). In the present case, even if Detective Vittatoe had made these statements, the defendant does not claim that Vittatoe threatened to arrest him or his brother in relation to the defendant's giving or failure to give a statement. Cf. United States v. Finch, 998 F.2d 349, 356 (6th Cir. 1993) (holding defendant's revelation of the location of cocaine was involuntary because officers threatened to arrest his mother and court found threat was conditioned upon defendant showing officers the cocaine). In fact, the defendant agreed that Vittatoe did not threaten him with respect to the making of his statement. Thus, the Court finds that the record does not support the defendant's claim of police coercion. Instead, the evidence preponderates in favor of a finding that the defendant voluntarily waived his Miranda rights.

Finally, the defendant claims that Detective Vittatoe took his statement despite him twice asking if he needed an attorney. The government argues that such an inquiry–whether a defendant needs an attorney–is not an unequivocal invocation of the right to counsel. The Court

16

accredits Detective Vittatoe's testimony that the defendant did not ask for an attorney. Moreover, the Court finds that the defendant signed the rights waiver form, which expressly states "I do not want a lawyer at this time." The Court finds this argument lacks any basis in fact and, therefore, merits no further analysis.

## IV. CONCLUSION

Based upon the reasons discussed herein, the Court respectfully recommends that the defendant's Motion to Suppress Statements of the Defendant [**Doc. 15**] be **DENIED**.[2]

                                          Respectfully submitted,

                                          s/ C. Clifford Shirley, Jr.
                                          United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

17

Case 3:04-cr-00016-TAV-CCS  Document 27  Filed 05/25/05  Page 17 of 17  PageID #: 17